[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Defendants move to strike the Amended Complaint, which alleges, in part, that C.G.S. § 47a-54d(b) mandates that the owner of a tenement house provide for the lighting of all public halls at night.
On April 25, 1995, the plaintiff, Gwendolyn Howard (Howard), filed a four count amended complaint against the defendants, CT Realty Trust (CT) and Eastern Crossing Condominium Association. On February 11, 1991, while descending the stairway in her condominium complex, Howard alleges that she fell and suffered severe injuries when the stairway lights went out. In count one of her complaint, Howard claims that CT negligently and carelessly: (a) failed to properly set the automatic timing system controlling the stairway lights; (b) failed to properly maintain the timing system; and (c) failed to ensure that the lights would remain lit during hours when natural light was insufficient to illuminate the stairway. In count two, Howard claims that the condominium complex constitutes a tenement house within the meaning of C.G.S. § 47a-50.
On August 28, 1995, CT filed a motion to strike the complaint on the ground that Howard failed to establish a duty to repair or replace hallway lights under section 47a-54d(b).[1]
Alternatively, CT argues that a condominium complex is not a tenement within the meaning of section 47a-54d(b), thus the statute is not applicable. On September 12, 1995, Howard filed a memorandum in opposition claiming that pursuant to Practice Book §§ 12 13, CT waived their right to file this motion by pleading out of order. CT Page 608
The threshold issue is whether CT waived its right to file a motion to strike after filing its Answer on July 20, 1993. "Although pleadings cannot generally be filed out of order . . . . a party may amend a previously filed pleading. See Practice Book § 176. When an amended pleading is filed, it operates as a waiver of the original pleading. The original pleading drops out of the case and although it remains in the file, it cannot serve as the basis for any future judgment, and previous rulings on the original pleading cannot be made the subject of appeal . . . . The defendants could have filed a timely motion to strike the amended complaint." (Citations omitted; internal quotation marks omitted.) Wilson v.Hryniewicz, 38 Conn. App. 715, 718, (1995). Practice Book § 177 provides that "[w]hen any pleading is amended the adverse party may plead thereto within the time provided by Sec. 114 or, if he has already pleaded, alter his pleading, if he so desires, within ten days after such amendment or such other time as these rules, or the court, may prescribe, and thereafter pleadings shall advance in the time provided by that section. If the adverse party fails to plead further, pleadings already filed by him shall be regarded as applicable so far as possible to the amended pleading."
In the present case, the Order granting Howard's motion to amend the complaint was entered on July 10, 1995. CT's motion to strike this amended complaint was filed on August 28, 1995; approximately forty-eight days after the amendment. Practice Book § 113 provides that, "[i]n all cases, when the court does not otherwise order, the filing of any pleading provided for by the preceding section will waive the right to file any pleading which might have been filed in due order and which precedes it in the order of pleading provided in this section."
CT's failure to file this motion to strike within the ten day period established in Practice Book § 177 could constitute a waiver of its right to bring this motion. However, "[t]he very words of § 113, "when the court does not otherwise order" indicate, . . . . that the court has discretion to allow the filing of pleadings out of order. Section 6 of the Practice Book supports this view by allowing for the liberal interpretation of the rules where "strict adherence to them will work surprise or injustice" because the very design of the rules is "to facilitate business and CT Page 609 advance justice." Sabino v. Ruffolo, 19 Conn. App. 402, 404,562 A.2d 1134 (1987). The court will exercise its discretion and decide the motion to strike the amended complaint on the merits.
Howard claims that the condominium complex is a tenement within the meaning of Section 47a-50 of the Connecticut General Statutes[2] and therefore CT had a duty to maintain lighted stairways. CT claims that the condominium complex is not a "tenement" because it "has no designated rental purpose." Memorandum in Support, p. 2.
Section 47a-50 defines a "tenement house" as, "any house or building, or portion thereof, which is rented, leased or hired out to be occupied, or is arranged or designed to be occupied, or is occupied, as the home or residence of three or more families, living independently of each other, and doing their cooking upon the premises, and having a common right in the halls, stairways or yards."
In order for the court to allow for the plaintiff to recover under § 47a-54d(b), the condominium complex must be a tenement within the meaning of § 47a-50.3 "When the language is unclear, however, the court must ascertain the statute's meaning. When we are confronted, however, with ambiguity in a statute, we seek to ascertain the actual intent by looking to the words of the statute itself; the legislative history and circumstances surrounding the enactment of the statute and the purpose the statute is to serve. A statute should be interpreted according to the policy which the legislation seeks to serve." (Citations omitted; internal quotation marks omitted.) Chrysler Corporation v. Maiocco, 209 Conn. 579,592, 552 A.2d 1207 (1989). While the legislative history of § 47a-50 does not specifically distinguish tenements from other forms of housing, in Gibson v. Hoppman, 108 Conn. 401,143 A. 635 (1928), the court held that a "building contain[ing] three separate apartments, one on each floor, each rented by the defendants to a separate family . . . . [was] clearly a tenement house within the definition given in § 2563 of the General Statutes." Id., 403-04.
In contrast to this definition, a condominium "has come to refer specifically to a multi-unit dwelling, each of whose residents (unit owners) enjoys exclusive ownership of his individual apartment or unit, holding a fee simple title CT Page 610 thereto, which retaining an undivided interest, as a tenant in common, in the common facilities and areas of the building and grounds which are used by all the residents of the condominium." 15A AM. JUR. 2D Condominiums and CooperativeApartments § 1 (1976).
"In reviewing a granting of a motion to strike, [the court] take[s] the facts alleged in the plaintiff's complaint and construe[s] the complaint in the manner most favorable to the plaintiff. This includes the facts necessarily implied and fairly provable under the allegations. It does notinclude, however, the legal conclusions or opinions stated inthe complaint. If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Emphasis added.) S.M.S. Textile v. Brown, Jacobson,32 Conn. App. 786, 790, 631 A.2d 340 (1993).
Howard offers no authority in either her amended complaint or memorandum in opposition to support the inference that a condominium is a tenement within the meaning of § 47a-150. "We have previously held that if a "pleading . . . on its face is legally insufficient, although facts may indeed exist which, if properly pleaded, would establish a cause of action upon which relief could be granted, a motion to strike is required." Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991).
Accordingly, defendant's motion to strike is granted.
Schimelman, J.